# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| ROBERT HAGOPIAN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-00257-LEW |
| | ) |
| MATTHEW DUNLAP, et al. | ) |
| | ) |
| Defendants. | ) |

## BRIEF OF *AMICUS CURIAE* MIKE TURCOTTE IN SUPPORT OF PLANTIFFS' CLAIM FOR DECLARATORY RELIEF

*Amicus curiae*[1] Michael Turcotte respectfully submits this brief in support of Plaintiff's claim for declaratory relief because Maine's Ranked-Choice Voting Act (RCV) denies voters *Due Process* under the 14th Amendment of the U.S. Constitution when the Defendants unequally process their ballot choices between rounds. The RCV process also restricts voters from freely casting their ballots for the candidate of their choice at any time on the ballot, thus denying them the ability to freely mark their ballots as they prefer and full participation in the outcome of the election.

---

[1] *Amicus* affirms that no counsel for a party authored this brief in the whole or part, no party or counsel for a party contributed money that was intended to fund the preparation and submission of this brief, and no person other than *amicus* or its counsel contributed money that was intended to fund the preparation and submission of this brief.

## INTERESTS OF *AMICUS CURIAE*

*Amicus* Curiae Mike Turcotte is a resident and registered voter of Bangor, Maine. Turcotte believes all citizens should choose powerfully, without political constraints or governmental restrictions, when selecting their elected leaders. He brought this belief to bear as a Pro se' litigant in 2011[2] when he argued the procedural structure involving Maine's Congressional Redistricting Commission granted affiliated voters of political parties extraordinary rights over un-enrolled voters[3] when re-mapping congressional districts. He holds a master's degree in Leadership and Ethics.

## PREFACE

Article I, Section 4, clause 1 of the US Constitution vests in "[t]he people, in several States…the Times, Places and Manner of holding federal elections." *Arizona State Legislature v Arizona Indep. Redistricting Comm'n,* 135 S. Ct. 2652, 2676 (2015); up to the point of "when [a] state power is used as an instrument for circumventing a federally protected right." - *Gomillion* v. *Lightfoot,* 364 U.S. 339, p. 347 (1960).

The "Act to Establish Ranked Choice Voting" (RCV), or the manner for which the State of Maine would hold state and federal, multi-candidate elections, was passed by Maine voters twice through citizen initiatives to elect candidates by

---

[2] *Turcotte v. LePage,* Case No. 12-1229
[3] 43% of the registered voting block at the time.

a majority. The RCV process replaced, in some races were not unconstitutional to state law, the plurality method – the candidate with the highest vote total on Election Day – to a scheme that uses an "instant runoff" to determine a majority winner.

## ARGUMENT

1. **Ranked Choice Voting Violates the *Due Process* Clause Under the 14th Amendment of the U.S. Constitution.**

After an election, if there is no majority winner following the first round of tabulation, the Defendant, Secretary of State Matthew Dunlap, initiates the RCV process to determine a majority winner.

Before the second round, and – if necessary – before all subsequent rounds of ballot tabulation, an often disregarded yet greatly important processing step takes place. After a voter's first-choice candidate is eliminated, the RCV process reallocates, or transfers, their second-choice[4] to remaining voters' first-choice continuing candidate(s) without taking account the remaining voters' second choice. In other words, after the first round of tabulation, every voters' ballot – whose choice was for a losing candidate, is not processed in the same manner in the second round as other voters' ballots – whose first-choice candidate was for an ongoing candidate in the first round.[5]

> "The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise." *Bush v. Gore,* 531 U.S. 98, 104 (2000)

---

[4] If ballot the voter's ballot is not exhausted.
[5] If the RCV process was applied to a traditional runoff election, the process or manner to attain a majority winner would be equivalent to allowing voters, whose first-choice candidate was eliminated, to cast their ballots for the remaining continuing candidates in the runoff election, then adding the runoff tabulation results to the continuing candidates' main election results without allowing the continuing candidates' voters from the main election to cast their ballots in the runoff election.

It is here where the RCV process violates a voter's right of *Due Process* under the 14th Amendment of the U.S. Constitution because it denies some voters the exact manner of tabulation purportedly given to all voters.

> "[I]n statewide and in congressional elections, one person's vote must be counted equally with those of all other voters…." *Reynolds v. Sims,* 377 U.S. 533, 560 (1964).

All voter ballots are eventually tabulated equally by weight (or value), but not processed equally beforehand.

For comparison, in the table below are the approximate process steps between plurality and the RCV process in determining an election winner.

| COMPARISON OF ELECTION TABULATION PROCESSES ||
| --- | --- |
| PLURALITY | RCV |
| 1. Scan all ballots.<br>2. Tabulate ballots.<br>3. Ascertain the winner by vote count.<br>4. Declare leading candidate the winner. | 1. Scan all ballots.<br>2. Tabulate all voter ballots' first choice.<br>3. Ascertain the winner by vote count.<br>   a) If a candidate receives a majority of votes, declare leading candidate the winner. If not, proceed to step 5.<br>4. Start the RCV process computer program.<br>5. Process all voter ballots by:<br>   a) Separating all voter ballots by choice:<br>     i) Voters whose ballots' first choice were for the last place or mathematically eliminated candidate(s), go to step 5b,<br>     ii) Voters whose ballots' first choice was for a continuing candidates, go to step 7,<br>   b) Determine the category voter's second-choice ballots from step 5(a)(i):<br>   c) Exhaust and separate voters' second-choice ballots from step 'b" by category, including 'overvotes' and 'undervotes'.<br>6. Tabulate remaining second choice ballots for continuing candidates with those of the first-choice ballots of continuing candidates.<br>7. Go back to Step 4. |

## 2.  Ranked-Choice Voting Places an Undue Restrictive Burden on a Voter's Ability to Freely Exercise their Voting Franchisee

"The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and *any restrictions* on that right strike at the heart of representative government." *Reynolds v. Sims,* 377 U.S. 533, 555 (1964) *(emphasis added)*

The RCV process restricts a voter's ability to freely and fully participate in their voting franchise by requiring them to rank the ballot's list of candidates by choice – even if there is a candidate they may have no interest in voting for – to make their ballots count in the later rounds of tabulation.

If a voter chooses not to mark any candidate choices beyond their first and or second choice, by the third or fourth choice, their ballot is deemed an undervote and exhausted by the Defendant Dunlap; thus not included in further rounds of tabulation.[6] Me. Rev. Stat. tit. 21-A. § 723-A(2).

As in the first argument, it is not the tabulation results in question; it is the inherent ballot restrictions to achieve a contrived result, a majority winner, which conflicts with Supreme Court precedent.

---

[6] An example of how the RCV process restricts voters from freely choosing his candidate of choice is: If, out of five candidates, a voter had cast their ballot for a less than popular candidate they preferred as their first choice, and a leading candidate the voter was willing to settle for as their second choice, then leaving the rest of his ballot choices blank.  After the first round of tabulation, the voter's first-choice candidate is eliminated. In the second tabulation round, their second choice candidate is a continuing candidate. But, by the third round, because of the RCV process restriction requiring all candidates to be ranked, the voter can no longer participate and therefore disenfranchised. The voter cannot mark their second choice as their third or fourth choice because, if they did, their ballot would be exhausted as an overvote.  Since the voter chose not to mark the remaining candidates on his ballot as his third and fourth choice, a ballot is deemed exhausted by undervote.

"[R]epresentative government is in essence self-government through the medium of elected representatives of the people, and each and *every citizen has an inalienable right to full and effective participation in the political processes*". *Reynolds supra* at 565. *(emphasis added)*

Completely ranking the list of candidates on their ballot, including some candidates a voter has no interest in voting for and may not want to see become continuing candidates in later rounds of tabulation, places an undue restrictive burden on their voting franchise.

## PROPOSED REMEDY OFFERED

### Background

Proponents of the RCV Act sought to depolarize our current rancorous political climate by allowing voters to rank their choices of candidates by preference in an effort to elect centrist candidates to elected office by a majority. They also sought to eliminate "vote-splitting"[7]; where voters, in an election slate of three or more candidates, split their votes between candidates with similar political ideology resulting in the election in which a candidate's political ideology is held by a minority of constituents.

The RCV system is routinely characterized by proponents as an "instant runoff" election. *White v. Skagit County,* 355 P. 3d 1178, 1188; 188 Wash. App. 886 (2015). In order to achieve a majority winner, thus saving a governing body

---

[7] "Vote-splitting" is an electoral effect in which the distribution of votes among multiple similar candidates reduces the chance of winning for any of the similar candidates, and increases the chance of winning for a dissimilar candidate.

the cost of holding another separate regular runoff election, it preloads multiple rounds of an instant runoff voting onto the general election ballot.

### Preface

Under this system, there are no exhausted ballots. All ballot choices are considered separate elections therefore voters have the option of marking each choice for the same candidate, or by their preference, any combination variation based on the number of candidates/choices.

If anyone of a voter's candidate choices is exhausted because the voter marked their ballot with two candidates on a choice – an overvote or they marked no candidate on a choice – an undervote, their ballot is still processed and tabulated (see below) in the present round of voting and, if no majority winner, subsequent rounds. With the elimination of only one last place candidate per round, a majority winner is eventually assured.

### Instructions:

Three instructions are all that is necessary for filling out a ballot:

| INSTRUCTIONS |
|---|
| 1. Fill in the oval next to a candidate's name. [8] <br> 2. Mark any, but only, one candidate for each choice. <br> 3. Mark, if you choose to, all choices on the ballot." |

---

[8] Turcotte lives in the City of Bangor which only uses fill-in scan ballots.

## Instant Runoff System

Proposed is a remedy in which all ballots are processed equally in all rounds of voting tabulation and none of the ballots are exhausted.

Somewhat like the RCV system[9], this "instant runoff" incorporates the elimination of a single, last-place candidate per round on an equal basis without reallocating voters' ballot choices.

The instant runoff election process is as follows:

| PROPOSED PROCESS OF ELIMINATION RUNOFF SYSTEM |
| --- |
| (EACH CHOICE ON A MULTI-CANDIDATE BALLOT EQUALS AN INSTANT RUNOFF ELECTION) |
| 1. Scan all ballots.<br>2. Tabulated each voter's first choice (move to the next choice, subsequent rounds),<br>3. If a majority winner, declare a winner. If not, eliminated the last-place candidate, next<br>4. Reset all continuing candidates' tabulation counts to zero,<br>5. Go to step 2 and repeat. |

## Tabulation:

At the end of each round of tabulation: voters' ballots with eliminated candidate choices – along with overvotes and undervotes – are processed and sorted as a "0", continuing candidate choices are processed and sorted as a "1," then tabulated: 0+0+0, etc. for eliminated candidates, overvotes and undervotes per round, 1+1+1, etc. for continuing candidates per round. All ballots are processed equally before each round of tabulation.

---

[9] In the RCV system, multiple candidates can be mathematically-eliminated.

If no majority winner per tabulation round(s), the last place candidate each tabulation round is eliminated, the process repeats itself until a majority candidate is determined and declared a winner.

### **Rationale**

The difference between the RCV system and this system is: the RCV system reallocates a voter's second choice in the second round and adds it to another voter's first choice from the first round this instant runoff system does not.

It is the voter's interest to vote for their preferred candidate(s); otherwise, any attempt at vote-rigging risks the candidate preference being eliminated in the early rounds.

Independent and third-party candidates are just as viable an alternative under this system as in RCV because voters are free to mark their ballot choices as they prefer.

There is less chance of vote-splitting[10] in subsequent rounds because less popular candidates may be eliminated in early rounds and voters can mark multiple choices on their ballots, including, but not limited to, a perceived leading political party candidate.

Like the RCV system, under this system, any candidate still has to campaign with a broader appeal to voters.

---

[10] Vote-splitting, if any, is most likely to occur in the first round.

## CONCLUSION

For the above stated reasons and those articulated in their brief, I support Plaintiffs' claim for declaratory relief should be granted.

Respectfully submitted,<br>
/s/ *Mike Turcotte*

- 11 -

Dated: August 6, 2020 By: /s/ *Mike Turcotte*
Mike Turcotte
Pro Se´
24 Cortland Circle
Bangor, ME 04401
Telephone: 207-991-7070
michaelpturcotte@gmail.com

- 12 -

## **CERTIFICATE OF SERVICE**

I certify that on August 6, 2020, I filed the foregoing document with the Clerk of the Court using the Cm/ECF system, which will send notice to counsel of record.